## State *versus* Charles F. Barnes.

A motion to quash an indictment is addressed to the discretion of the presiding Judge.

When a party has pleaded and a verdict has been found against him, a motion to quash the indictment is not regularly before the Court, and the overruling it is not subject to exceptions.

Where the presiding Judge instructs the jury in a manner appropriate to the facts of the case, and correctly as to the law, though not in terms as requested, there is no cause for exceptions.

Indictment, against the defendant for unlawfully keeping and suffering to be kept for the purpose of hire and gain, a certain shop or building for the purpose of gaming, gambling and playing for money and other things, &c.

On the trial, in the District Court, before Rice, J., the county attorney introduced evidence tending to show that such a building was kept by the defendant for the purpose of playing at bowls and cards; those who played at bowls paid fifty cents an hour, or ninepence a game, to one Mitchell or to persons employed by him to set up pins, and that it was common to roll off to see who should pay for the use of the alley, and for liquor drunk; that there was a room connected with the bowling room, in which cigars and candies and liquor were kept, and that the game of cards was played in that room, and on two or three occasions, a small amount of money was played for, some small change on the table being taken up by the winner, and in three or four instances, it was testified, that persons in said " edifice," played to see who should pay for the liquor they drank.

It appeared that respondent erected one bowling alley in the basement room in 1847, and three others in the same building in March, 1848. And that on the 21st of March, 1847, he rented the first alley to one Mitchell for $100,

for one year, and that Mitchell had control of the establishment, but made no special contract as to the three other alleys, as he was expecting to have them at the same rate. Mitchell kept cigars, candies, &c. in the room above, connected with the bowling room, which he had of Barnes, and paid him one half the profits of sale.

It also appeared, that Barnes put up a notice, March 21, 1847, on a post in the bowling room, that no gambling could be allowed in said room or any part of the establishment, which notice remained there ; and that said Barnes several times inquired of those who had charge of the alleys, &c., if any person gambled there, requesting to be informed if any one should do so, or break over the rule. It was testified that said Barnes, on one or more occasions, played at cards to see who should pay for the liquor they drank, and that liquor was sold there. It was also proved that sundry persons played at cards and at bowling. The card playing for money, was in the winter of 1847 and 1848. Barnes was frequently in the room connected with the bowling alleys, and often tending the bar and taking pay, and had been heard to say that the whole establishment belonged to him, and was his concern.

It also appeared, that this was a place of frequent and almost constant resort, and that bowling was kept up there a good deal of the time both in the day time and evening, and that those who resorted and played there were mostly young men, citizens of Wiscasset.

The counsel for the respondent requested the Court to instruct the jury, that "rolling off" to see who should pay for the use of the alleys, or the playing for the liquor or cigars used, was not gaming within the true intent and meaning of the statute, and that the evidence of two or three solitary instances of persons playing there for money, in small and inconsiderable sums, without the knowledge of defendant, would not constitute gaming, nor subject defendant to the charge of keeping a house for the purposes of gaming.

The presiding Judge, after reading to the jury the 7th sec. of chap. 35, R. S., said, that in order to sustain the indictment,

the government must satisfy them that the building referred to in the indictment, was kept by the respondent, and was resorted to for the purpose of gaming, with his knowledge and consent; that playing at cards or bowls simply for amusement or exercise was not gaming within the meaning of the statute; to constitute that offence the gaming must be for money or other things, and to make this house a gaming house, it must be kept and resorted to for the purpose of gaming for money or other things; that if the house described in the indictment was kept and controlled by Mitchell or any person other than the respondent, then the respondent would not be liable unless the persons thus keeping and controlling the house, were his agents or servants, and acted under his direction and control; if however the house was managed by others, and those managers were the mere agents or servants of the respondent, he would be liable in the same manner as he would have been, had he controlled and managed the establishment personally.

A verdict of guilty was rendered, and after verdict and before sentence the counsel for the respondent filed a motion in writing to quash the indictment for various reasons therein set forth, which was overruled. Exceptions were taken to the rulings and instructions, and omissions to instruct.

*Ruggles,* for the respondent.

*Hill,* County Attorney, for the State.

HOWARD, J. — Motions to quash, are addressed to the discretion of the presiding Judge. He may quash a defective indictment, or he may require the party to plead or demur, but he is not bound, *ex debito justitiæ,* to dispose of the prosecution summarily, on such motion.

After a party has pleaded, and after verdict against him, a motion to quash the indictment is not regularly before the Court, and the overruling it is not subject to exceptions. 1 Chitty's C. L. 245—250; Bac. Abr. Indictment, K; 4 Hawk. b. 2, c. 25, § 146; *Rex* v. *King,* Str. 1268; *Rex* v. *Johnson,* 1 Wils. 325; *King* v. *Wynn,* 2 East, 226; *State* v. *Soule,* 20 Maine, 20.

The prisoner's counsel contended that, "rolling off to see who should pay for the use of the alley, or the playing for the liquor or cigars used, was not gaming within the true intent and meaning of the statute, and·that the evidence of two or three solitary instances of persons playing there for money in small and inconsiderable sums, without the knowledge of the defendant, would not constitute gaming, nor subject the defendant to the charge of keeping a house for the purpose of gaming, and requested the Court to instruct the jury in accordance with these positions."

The presiding Judge, in the District Court, did not comply with this request, in terms, but instructed the jury, " that, in order to sustain the indictment, the government must satisfy them that the building or house, referred to in the indictment, was kept by the respondent and was resorted to for the purpose of gaming, with his knowledge and consent; that playing at cards or bowls simply for amusement or exercise, was not gaming within the meaning of the statute; that to constitute that offence, the gaming must be for money or other things, and to make this house a gaming house, it must be kept and resorted to for the purpose of gaming for money or other things."

These instructions were appropriate and correct, and were all that were required by the facts and law of the case, which were embraced in the request.   Other instructions were given, upon other requests, to which exceptions were not filed.

The exceptions are overruled, and the case is remanded to the District Court for further proceedings.